## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Attorney's Office for the Southern District of Georgia and on behalf of the Office of Inspector General of the Department of Health and Human Services ("OIG-HHS") and the TRICARE Management Activity ("TMA") (collectively the "United States"), defendants Augusta Medical Systems, LLC ("AMS") and Julian Osbon ("Osbon"), and relator Joseph Testino ("Testino"), (hereafter, collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.   AMS is a Georgia corporation having its principal place of business at 1027 Broad Street, Augusta, Georgia and is engaged in the business of manufacturing and selling products for the treatment of erectile dysfunction. Included in AMS's customer base are individuals eligible to receive reimbursement and/or health benefits under the Medicare and TRICARE Programs. Osbon is the former president and chief executive officer of AMS.

B.   On October 26, 2007, Relator filed a *qui tam* action in the United States District Court for the Southern District of Georgia, Augusta Division, captioned *United States ex rel. Joseph Testino v. Augusta Medical Systems, LLC and Julian Osbon*, (1:07-cv-146-JRH-WLB), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (hereafter "the Civil Action").

The United States partially intervened in the Civil Action on April 5, 2010 and filed the United States' Complaint on June 23, 2010. The United States subsequently filed an Amended Complaint on July 26, 2011.

C.   The United States contends that defendants AMS and Osbon submitted or caused

to be submitted claims for payment to the Medicare Program ("Medicare"), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and the TRICARE Program, 10 U.S.C. §§ 1071-1110a.

D.   The United States contends that it has certain civil claims against defendants AMS and Osbon for knowingly submitting or causing to be submitted claims from February 11, 2003, through February 14, 2004, when AMS and Osbon were not approved by Medicare and were ineligible to receive Medicare and TRICARE reimbursements. These civil claims against defendants AMS and Osbon are described generally in paragraphs 50-74 of the United States' Amended Complaint. These civil claims shall be referred to below as the Covered Conduct ("Covered Conduct").

E.   This Settlement Agreement is neither an admission of liability by AMS or Osbon nor a concession by the United States that its claims are not well founded.

F.   Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.   AMS and Osbon shall pay one million four-hundred thousand dollars ($1,400,000.00) ("Settlement Amount") to the United States by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Southern District of Georgia, no later than three (3) business days after the Effective Date of this Agreement.

2.   Conditioned upon the United States receiving the Settlement Amount from AMS and Osbon, and as soon as feasible after receipt, the United States shall pay two-hundred thirty-eight thousand dollars ($238,000.00) to Relator by electronic funds transfer.

3.   AMS and Osbon agree to pay one-hundred thirty-five thousand two-hundred ten and 75/100 dollars ($135,210.75) of Relator's attorneys' fees and costs incurred in connection with this action to Relator's counsel by electronic funds transfer pursuant to written instructions agreed to between AMS and Osbon and Relator. AMS and Osbon agree to make this electronic funds transfer no later than three (3) business days after the Effective Date of this Agreement. Conditioned upon receipt of the payment described in Paragraph 1 and this Paragraph 3, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, agrees to release AMS and Osbon, their affiliates, divisions and subdivisions, their current and former officers, directors, agents, and employees, individually and collectively, from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs, incurred in connection with the Civil Action.

4.   Subject to the exceptions in Paragraph 9 (concerning excluded claims) below, and conditioned upon AMS's and Osbon's full payment of the Settlement Amount, the United States releases AMS and Osbon, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners; and officers, directors, and affiliates; and the successors and assigns of any of them, and AMS's officers, agents, servants, and employees, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust

3

enrichment, and fraud.

5. Subject to the exceptions in Paragraph 9 below, and conditioned upon AMS's and Osbon's full payment of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases AMS and Osbon from any civil monetary claim he has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6. OIG-HHS expressly reserves all rights to institute, direct, or maintain any administrative action seeking exclusion against AMS and/or its officers, directors, and employees from Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion), or 42 U.S.C. § 1320a-7(b) or 42 U.S.C. § 1320a-7a (permissive exclusion).

7. a. In compromise and settlement of the rights of OIG-HHS to exclude Osbon pursuant to 42 U.S.C. § 1320a-7(b)(7), based upon the Covered Conduct, Osbon agrees to be excluded under this statutory provision from Medicare, Medicaid, and all other Federal health care programs, as defined in 42 U.S.C. § 1320a-7b(f), for a period of five (5) years. The exclusion shall be effective upon the Effective Date of this Agreement.

b. Such exclusion shall have national effect and shall also apply to all other federal procurement and nonprocurement programs. Federal health care programs shall not pay anyone for items or services, including administrative and management services, furnished, ordered, or prescribed by Osbon in any capacity while Osbon is excluded. This payment prohibition applies to Osbon and all other individuals and entities (including, for example, anyone who employs or contracts with Osbon, and any hospital or other provider where Osbon provides services). The exclusion applies regardless of who submits the claim or other request

4

for payment. Osbon shall not submit or cause to be submitted to any Federal health care program any claim or request for payment for items or services, including administrative and management services, furnished, ordered, or prescribed by Osbon during the exclusion. Violation of the conditions of the exclusion may result in criminal prosecution, the imposition of civil monetary penalties and assessments, and an additional period of exclusion. Osbon further agrees to hold the Federal health care programs, and all federal beneficiaries and/or sponsors, harmless from any financial responsibility for items or services furnished, ordered, or prescribed to such beneficiaries or sponsors after the effective date of the exclusion. Osbon waives any further notice of the exclusion under and agrees not to contest such exclusion either administratively or in any state or federal court.

      c.     Reinstatement to program participation is not automatic. If Osbon wishes to be reinstated, Osbon must submit a written request for reinstatement to the OIG in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Such request may be made to the OIG no earlier than 120 days prior to the expiration of the minimum period of exclusion. Reinstatement becomes effective upon application by Osbon, approval of the application by the OIG, and notice of reinstatement by the OIG. Obtaining another license, moving to another state, or obtaining a provider number from a Medicare contractor, a state agency, or a Federal health care program does not reinstate Osbon's eligibility to participate in these programs.

      8.     In consideration of the obligations of AMS and Osbon set forth in this Agreement, conditioned upon AMS's and Osbon's full payment of the Settlement Amount, TMA agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against AMS, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or

former owners; and officers, directors, and affiliates; and the successors and assigns of any of them, and AMS's officers, agents, servants, and employees under 32 C.F.R. § 199.9 for the Covered Conduct, except as reserved in Paragraph 9 (concerning excluded claims), below. Nothing in this Paragraph precludes TMA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9, below. The exclusion of Osbon by OIG-HHS referenced in Paragraph 7 above, will result in Osbon being excluded from the TRICARE Program.

9. Notwithstanding the releases given in paragraphs 4, 5, and 7 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; and

    e. Any liability based upon obligations created by this Agreement;

10. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil

Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

11. Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, fully and finally releases AMS and Osbon, and its officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action and/or AMS's and Osbon's defense thereof including claims that Relator asserted, could have asserted or may assert in the future, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs. This paragraph does not apply to other matters or other litigation currently pending or other causes of action that may exist.

12. AMS and Osbon waive and shall not assert any defenses AMS and Osbon may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

13. AMS and Osbon fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that AMS and Osbon have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and

prosecution thereof. AMS and Osbon fully and finally release the Relator, his heirs, successors, attorneys, agents and assigns, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that AMS and Osbon have asserted, could have asserted, or may assert in the future against the Relator, his heirs, successors, attorneys, agents and assigns, related to the Covered Conduct and the Relator's investigation and prosecution thereof. This paragraph does not apply to other matters or other litigation currently pending or other causes of action that may exist.

14. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary, TRICARE carrier or payer, or any state payer, related to the Covered Conduct; and AMS and Osbon agree not to resubmit to any Medicare carrier or intermediary, TRICARE carrier or payer, or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

15. AMS and Osbon agree to the following:

a. If applicable, Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of AMS and Osbon, their present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) AMS's and Osbon's investigation, defense, and corrective

8

                   actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

    (4)    the negotiation and performance of this Agreement;

    (5)    the payment AMS and Osbon make to the United States pursuant to this Agreement and any payments that AMS and Osbon may make to Relator, including costs and attorney's fees;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program ("FEHBP") (hereinafter referred to as "Unallowable Costs").

    b.    If applicable, Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for in nonreimbursable cost centers by AMS and Osbon, and AMS and Osbon shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by AMS and Osbon or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

    c.    If applicable, Treatment of Unallowable Costs Previously Submitted for Payment: AMS and Osbon further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this

Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by AMS and Osbon or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. AMS and Osbon agree that the United States, at a minimum, shall be entitled to recoup from AMS and Osbon any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by AMS and Osbon or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on AMS and Osbon or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.  If applicable, nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine AMS's and Osbon's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

16.  This Agreement is intended to be for the benefit of the Parties only, including current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current and former owners; officers, directors, affiliates, the successors and assigns of any of them; and agents, servants, and employees. The Parties do not release any

claims against any other person or entity, except to the extent provided for in Paragraphs 4 and 17 (waiver for beneficiaries paragraph), below.

17. AMS and Osbon agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

18. Upon receipt of the payment described in Paragraph 1, above, the United States and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of AMS and Osbon with prejudice of the Civil Action pursuant to Rule 41(a)(1).

19. Each party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

21. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Georgia. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

23. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24. This Agreement may be executed in counterparts, each of which constitutes an

original and all of which constitute one and the same Agreement.

25. This Agreement is binding on AMS's and Osbon's successors, transferees, heirs, and assigns.

26. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

27. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

28. This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date" of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[signature pages to follow]

THE UNITED STATES OF AMERICA

DATED: 5/22/12    BY: _____
JAMES D. DURHAM
Acting United States Attorney
Southern District of Georgia

DATED: 5/21/2012    BY: _____
SHANNON HEATH STATKUS
Assistant United States Attorney
Southern District of Georgia

DATED: 5/21/2012    BY: _____
EDGAR D. BUENO
Assistant United States Attorney
Southern District of Georgia

<u>THE UNITED STATES OF AMERICA</u>

DATED: __5/25/12__    BY: _____
GREGORY E. DEMSKE
Chief Counsel to the Inspector General
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

<u>THE UNITED STATES OF AMERICA</u>

DATED: 5/15/12     BY: _____
                        PAUL J. HUTTER
                        General Counsel
                        TRICARE Management Activity
                        United States Department of Defense

DEFENDANT AUGUSTA MEDICAL SYSTEMS, LLC

DATED: 5/21/12          BY: _____
                             MICHAEL OSBON
                             President and CEO
                             Augusta Medical Systems, LLC

DATED: 5/21/12          BY: _____
                             REBEKAH PLOWMAN
                             Counsel for Augusta Medical Systems, LLC

16

DEFENDANT JULIAN OSBON

DATED: May 21, 2012          BY: _____
                                  JULIAN OSBON

DATED: May 21, 2012          BY: _____
                                  NEAL DICKERT
                                  Counsel for Julian Osbon

17

RELATOR JOSEPH TESTINO

DATED: 05-18-12      BY: _____
                         JOSEPH TESTINO

DATED: 5-18-12       BY: _____
                         MICHAEL SULLIVAN
                         Counsel for Joseph Testino